UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DANIEL S. JORGENSEN,

    Plaintiff,

v.                                                    Case No. 08-C-1022

BYRAN BARTOW,

    Defendant.

**ORDER**

Plaintiff Jorgensen, who is confined at the Wisconsin Resource Center ("WRC") under a civil commitment as a sexually violent person, *see* Wis. Stat. ch. 980 ("Chapter 980"), has filed an action under 42 U.S.C. § 1983 claiming that his constitutional rights have been violated. More specifically, Jorgensen claims he slipped and fell due to the fact a "non-traditional mop wringer" was used in his unit at the WRC. (Compl. at 3.) He also alleges he was not allowed to see a doctor immediately after his fall. (*Id.*) Jorgensen also advances claims under Wisconsin Statutes §§ 51.67(7)(a) and (b), Wisconsin Administrative Code HFS § 94.01 *et seq.*, and the Wisconsin state constitution.

Ordinarily, a plaintiff must pay a statutory filing fee of $350 to bring an action in federal court. 28 U.S.C. § 1914(a). Plaintiff, however, has requested leave to proceed *in forma pauperis*, pursuant to 28 U.S.C. § 1915. And because he is under a Chapter 980 commitment, as opposed to a sentence for a crime, the Prisoner Litigation Reform Act ("PLRA"), which, *inter alia*, requires payment of the full filing fee over time, does not apply. *West v. Macht*, 986 F. Supp. 1141, 1142-43 (W.D. Wis. 1997).

Section 1915 is meant to ensure indigent litigants meaningful access to federal courts. *Nietzke v. Williams*, 490 U.S. 319, 324 (1989). An indigent plaintiff may commence a federal court action, without paying required costs and fees, upon submission of an affidavit asserting inability "to pay such fees or give security therefor" and stating "the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1).

Plaintiff filed the required affidavit of indigence. He states that he has assets of $100 and that he does have an institutional job for which he receives $30 per month. Where it is not economically unfair for a plaintiff to pay a portion of the filing fee, I have authority to order payment of a portion of the expense while waiving the remainder. *Bryan v. Johnson*, 821 F.2d 455, 457 (7th Cir. 1987). Here, I conclude Jorgensen does not have sufficient income or assets to pay a meaningful portion of the filing fee. Accordingly, the entire filing fee will be waived.

Though individuals who are involuntarily committed, rather than convicted, are not deemed prisoners under the Prison Litigation Reform Act, I nevertheless maintain a duty to "screen" all complaints to ensure that they comply with the Federal Rules of Civil Procedure and that they state at least plausible claims for which relief may be granted. A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. *Haines v.*

*Kerner*, 404 U.S. 519, 520-21 (1972). With these standards in mind, I now turn to the allegations of Jorgensen's complaint.

The first claim of deliberate indifference alleges that defendant directed the implementation of policies and procedures at the WRC which resulted in the use of a "non-traditional mop wringer" in Jorgensen's unit of the WRC. This colander-like wringer was apparently adopted as a security precaution, as another type of wringer had been used as a weapon by an inmate against a WRC employee. Although the unit in which Jorgensen resides uses the new wringer, Jorgensen alleges it is the only one of the four units of the WRC which houses individuals under Chapter 980 to do so. Jorgensen claims he slipped and fell on October 20, 2008, while walking on a freshly-mopped floor in his unit. He attributes his fall to the fact the floor was excessively wet due to the use of the "security" mop wringers. Jorgensen claims he injured his knee in the fall.

Jorgensen also complains about the fact he did not see a doctor about his injury until October 23, 2008. The complaint indicates a WRC nurse did attend to him "within minutes" of his fall and that the nurse directed him to apply ice to his knee and take a pain reliever as needed. WRC staff also provided Jorgensen a wheelchair to use and the complaint indicates Jorgensen began walking soon thereafter with "extreme care." The doctor diagnosed his injury as a hyper-extended knee, and told Jorgensen he could continue to walk and take pain reliever as needed. Plaintiff asserts that the reason he wasn't seen by a doctor sooner is the same reason the WRC adopted the use of the security mop wringer–the WRC houses both those committed under Chapter 980 and inmates serving a sentence.[1]

---

[1] Jorgensen claims, "Had I been at Mendota Mental Health Center, ("MMHI"), I would have been seen right away, instead I had to put in a blue slip and wait until three days past." (Compl. at 3.) Jorgensen notes he had previously spent three years at MMHI and MMHI used "standard mop wringers" and that the nurses and doctors show "much better bedside manners". (*Id.*)

Jorgensen fails to state a claim that one of his constitutional or federally-protected rights was violated by defendant through the WRC's use of the "security" mop wringer. Plaintiff essentially advances a claim that the use of the wringer created an unsafe condition at the WRC. A claim that a property owner allowed an unsafe condition to exist on the property typically proceeds on a theory of negligence. As I noted in another case:

> When the defendant is a state actor, however, the temptation exists to allege that the defendant was not just negligent but in violation of the Constitution. Such a claim, brought under § 1983, requires a much higher showing than mere negligence, however. To successfully make out a § 1983 claim, a plaintiff must allege that the defendant was deliberately indifferent to a serious risk of substantial harm. Deliberate indifference is a mental state approaching intent: the defendant need not intend harm, but he must know that an excessive risk exists to the plaintiff's health and safety if no corrective action is taken. . . In short, negligence is not enough. . . When the complaint alleges that the defendant failed to protect the plaintiff from a known dangerous condition, the question of deliberate indifference can be phrased as whether the plaintiff's exposure to that condition would "offend contemporary standards of decency." *Christopher*, 384 F.3d at 882.

*Gray v. McCormick*, 2007 WL 2712961, * 1 (E.D. Wis. Sept. 14, 2007) (some citations omitted), aff'd, 281 Fed. Appx. 592, 2008 WL 2437053 (7th Cir. 2008).

The complaint regarding the mop wringer does not sufficiently allege deliberate indifference.[2] It alleges that defendant directs the policies and procedures of the WRC, and that the switch to the security mop wringer was a WRC-wide policy which resulted in plaintiff's injury. In *Gray*, I had occasion to discuss *Christopher v. Buss*, 384 F.3d 879 (7th Cir. 2004), in which the Seventh Circuit discussed whether an inmate's exposure to a "lip" on a softball field amounted to deliberate indifference:

---

[2] Given Jorgensen's status as a civilly committed detainee, the protections afforded to prisoners under the Eighth Amendment are afforded to him under the Fourteenth Amendment. *See Sain v. Wood*, 512 F.3d 886, 893-94 (7th Cir. 2008).

4

> In *Christopher,* for example, the Seventh Circuit rejected an inmate's claim of deliberate indifference when he alleged that the conditions on the prison's softball field were dangerous. *Id*. The inmate alleged that a "lip" on the field, which had previously resulted in injury to another inmate, caused a ball to bounce up into his face and injure him. The court found that even if the defendants knew the lip was inherently dangerous, exposure to that condition did not amount to deliberate indifference. The court contrasted exposure to other dangerous conditions-such as excessive cigarette smoke, violent other inmates, dangerous machinery, and raw sewerage-and concluded that exposure to a dangerous softball field did not offend contemporary standards of decency. *Id*.

*Gray*, 2007 WL 2712961, * 1.

Like a dangerous softball field, exposure to floors that are mopped by mops with a colander-type wringer does not offend contemporary standards of decency or evidence a defendant's knowledge of an excessive risk of injury. Under the facts as alleged in the complaint, exposure to a floor mopped by a mop wrung out by a colander-type wringer does not does not suffice to state a claim that the director of the WRC disregarded an objectively serious risk to the plaintiff's safety. Stated another way, the use of the wringer does not rise to the level of dangerousness that would allow a factfinder to conclude either that there was an objectively serious risk of harm or that the defendant possessed the culpable mental state. Instead, plaintiff states a classic claim for negligence, which he is free to allege in state court. The claim relating to the mop wringer will be dismissed for failure to state a claim upon which relief may be granted.

This leaves Jorgensen's claim that the three day delay between his fall and the time he saw a doctor constitutes deliberate indifference on the part of Bartow. A delay in the provision of medical care for a painful, even if not life-threatening, condition can support a claim for deliberate indifference. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). Yet, this claim must fail as it alleges no facts sufficient to provide WRC Director Byran Bartow notice of the conduct for

5

which he could be liable. It alleges no personal involvement on his part, and since the doctrine of respondeat superior does not apply to § 1983 actions, *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001), I find no claim against him. Accordingly, this claim will be dismissed.

As Jorgensen's claims under 42 U.S.C. § 1983 will be dismissed, I decline to exercise supplemental jurisdiction over his claims under Wis. Stat. §§ 51.61(7)(a) and (b), Wis. Admin. Code HFS § 94.01 *et seq.*, and the Wisconsin state constitution.

**IT IS THEREFORE ORDERED** that plaintiff's request to proceed *in forma pauperis* is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's § 1983 claim is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

**IT IS ALSO ORDERED** that the plaintiff's state law claims are **DISMISSED** without prejudice.

Dated this   10th   day of December, 2008.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge